IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER L. GRANT                         :

                                            :

      v.                                  :    Civil Action No. DKC 11-1724

                                            :

SHAPIRO & BURSON, LLP, et al.             :
                                            :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Shapiro & Burson, LLP, Wells Fargo Bank, N.A. ("Wells Fargo"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants"). (ECF No. 6).[1] The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to dismiss will be granted as to Plaintiff's federal claims. Plaintiff will be permitted an opportunity to amend her complaint to state

---

[1] Plaintiff Jennifer Grant also filed her complaint against Abba Title Company, LLC ("Abba Title"), but the record contains no return of service for this organization and it has not appeared in this action. Because more than 120 days have now passed since the filing of the complaint, Plaintiff will be directed to show cause within fourteen days of the issuance of the attached Order why the complaint should not be dismissed without prejudice as to Abba Title pursuant to Local Rule 103.8a.

a cognizable claim under § 2605(b)(1) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* The court will defer consideration of Plaintiff's state law claims until a determination is made regarding the propriety of any amended RESPA claim.

## I.  Background

### A.    Factual Background

This case arises from two separate, but related, events: the refinancing of Plaintiff's home in 2007, and the subsequent foreclosure of that home in 2010. The following limited facts regarding these events are largely taken from the complaint, but some of them have been supplemented with information contained in exhibits to Defendants' motion to dismiss.[2]

---

[2] "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage," the court may consider it where the plaintiff has notice of the evidence, does not dispute its authenticity, and relies on it in framing the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2002); *see also Douglass v. NTI-TSS, Inc.*, 632 F.Supp.2d 486, 490 n.1 (D.Md. 2009). Here, Defendants have attached the deed of trust to their motion to dismiss, and Plaintiff does not contest its authenticity. Because she relied on this document in framing her complaint and seeks damages for the full value of the deed of trust, the court may consider it in resolving Defendants' motion to dismiss.

The court may also take judicial notice of "matters of public record" when resolving a motion to dismiss. *Clark v. BASF Salaried Employees' Pension Plan*, 329 F.Supp.2d 694, 697 (W.D.N.C. 2004), *aff'd as modified by* 142 F.App'x 659 (4th Cir. 2005); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

At some time prior to September 2007, Plaintiff purchased a home in Bladensburg, Maryland, using a loan financed by Wells Fargo.  On September 7, 2007, Plaintiff refinanced the original loan with a $342,000 loan secured by a deed of trust that she also obtained through Wells Fargo.[3]  The trustee listed on the deed was John Burson, an attorney at Shapiro & Burson.  When finalizing the refinancing, Plaintiff alleges that she did not receive 1) an accurate disclosure of the itemized finance charges, 2) a "Good Faith Estimate Disclosure," 3) a disclosure about the "kickback, hidden referral fee and or the yield spread premium charged to Plaintiff," 4) a disclosure about "the affiliated business arrangements of the Lender, the Settlement Company and the Broker," 5) a notice regarding potential transfer of the servicing of Plaintiff's refinanced loan, or (6) a "Special Information Booklet."  (ECF No. 1 ¶¶ 16, 26, 27). Additionally, the deed of trust was notarized by a notary in Maryland, although the settlement occurred in Alexandria, Virginia.  Defendants also subsequently transferred the

---

308, 322 (2007).  For this reason, the order ratifying the foreclosure of Plaintiff's home, which was issued by the Circuit Court for Prince George's County and included as an exhibit to Defendants' motion, may also be considered at this stage.

[3] "The borrowers [listed] under the Deed of Trust were . . . [Plaintiff] and Miriam Gibson."  (ECF No. 1 ¶ 7).  Only Plaintiff is a party to the present action.

servicing of the refinanced loan without informing Plaintiff within fifteen days.

By 2009, Plaintiff had defaulted on the refinanced loan, and foreclosure proceedings ensued in the Circuit Court for Prince George's County.  On June 1, 2009, Plaintiff received notice from the court that her home was in foreclosure.  A foreclosure sale of Plaintiff's home was subsequently scheduled for August 24, 2010.  Plaintiff planned to attend this sale, but it was cancelled at the last minute by a trustee at Shapiro & Burson.  When Plaintiff asked the trustee when the sale would be rescheduled, an attorney from Shapiro & Burson instructed the trustee not to inform her of the next sale date.  Plaintiff did not receive any other notice about the rescheduled sale date and was not aware when it would occur.  On October 18, 2010, Plaintiff was notified that the sale had taken place.[4]  She filed for chapter 13 bankruptcy protection on November 11, 2010, in the United States Bankruptcy Court for the District of Maryland.[5]

---

[4] Plaintiff also alleges that "the documents necessary to conduct a proper foreclosure . . . were not executed by the parties/attorneys whose signatures appear on those documents." (ECF No. 1 ¶ 1).  She does not clarify this statement at any point in her complaint.

[5] On October 26, 2011, the bankruptcy court issued an order lifting the automatic stay imposed by 11 U.S.C. § 362(a) and the co-debtor stay imposed by 11 U.S.C. § 1301(a) in order to allow this litigation to proceed.

The circuit court ratified the foreclosure sale on March 29, 2011.

### B.   Procedural Background

On June 23, 2011, Plaintiff, proceeding *pro se*, commenced the present action by filing a complaint in this court against Shapiro & Burson, Wells Fargo, MERS, and Abba Title.   The complaint sets forth the following eleven counts, apparently as to all defendants:   (1) "injunction and restraining order," (2) "mortgage fraud predatory lending," (3) "defective foreclosure failure to give proper notice of pending foreclosure sale," (4) unjust enrichment, (5) gross negligence, (6) violation of the duty of good faith, (7) "defective deed of trust," (8) "set aside or vacate foreclosure," (9) violations of RESPA, (10) fraud, and (11) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and "civil conspiracy to commit mail fraud, and civil conspiracy to commit wire fraud." (ECF No. 1).

After waiving service, Defendants Shapiro & Burson, Wells Fargo, and MERS moved to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6).   (ECF No. 6).   Plaintiff obtained counsel and filed an opposition in which she only opposed one of

the arguments raised within Defendants' motion.[6]   Defendants

timely replied.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule

12(b)(6) is to test the sufficiency of the complaint.  *Presley*

*v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A

plaintiff's complaint need only satisfy the standard of Rule

8(a), which requires a "short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed.R.Civ.P.

8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than

a blanket assertion, of entitlement to relief."  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must

consist of more than "a formulaic recitation of the elements of

a cause of action" or "naked assertion[s] devoid of further

factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotation marks omitted).

At this stage, the court must consider all well-pleaded

allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.

---

[6] Plaintiff attached an affidavit to her opposition papers setting forth new allegations regarding an unspecified lender's repeated denial of her requests for loan modification.  Because Plaintiff may not amend her complaint via opposition papers, these allegations will not be considered in resolving the pending motion.  *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (unpublished table opinion).

266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   Additionally, complaints filed by *pro se* plaintiffs are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

In evaluating the complaint, regardless of whether it was filed *pro se*, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P.

8(a)(2)).   Thus,  "[d]etermining  whether  a  complaint  states  a  plausible  claim  for  relief  will  .  .  .  be  a  context-specific  task  that  requires  the  reviewing  court  to  draw  on  its  judicial  experience and common sense."  *Id.*

Moreover,  allegations  of  fraud  –  which  Plaintiff  raises  in  both  her  RICO  and  state  law  claims  -  are  subject  to  a  heightened  pleading  standard  under  Rule  9(b).   *Harrison*,  176  F.3d  at  783-84.    Rule  9(b)  states  that  "in  alleging  a  fraud  or  mistake,  a  party  must  state  with  particularity  the  circumstances  constituting  the  fraud  or  mistake.    Malice,  intent,  knowledge,  and  other  conditions  of  a  person's  mind  may  be  alleged  generally."    Such  allegations  typically  "include  the  'time,  place  and  contents  of  the  false  representation,  as  well  as  the  identity  of  the  person  making  the  misrepresentation  and  what  [was]  obtained  thereby.'"   *Superior  Bank,  F.S.B.  v.  Tandem  Nat'l  Mortg.,  Inc.*,  197  F.Supp.2d  298,  313–14  (D.Md.  2000)  (quoting  *Windsor  Assocs.,  Inc.  v.  Greenfeld*,  564  F.Supp.  273,  280  (D.Md.  1983)).    In  cases  involving  concealment  or  omissions  of  material  facts,  however,  meeting  Rule  9(b)'s  particularity  requirement  will  likely  take  a  different  form.   *See  Shaw  v.  Brown  &  Williamson  Tobacco  Corp.*,  973  F.Supp.  539,  552  (D.Md.  1997)  (recognizing  that  an  omission  likely  "cannot  be  described  in  terms  of  the  time,  place,  and  contents  of  the  misrepresentation

or the identity of the person making the misrepresentation" (internal quotations omitted)).   The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, to protect the defendant against frivolous suits, to eliminate fraud actions where all of the facts are learned only after discovery, and to safeguard the defendant's reputation.   *See Harrison*, 176 F.3d at 784.   In keeping with these objectives, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant[s were] made aware of the particular circumstances for which [they] will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."   *Id.*

Additionally, one of the grounds on which Defendants seek dismissal is the statute of limitations.   The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c) and is not usually an appropriate ground for dismissal.   *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002).   Nevertheless, dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."   *Brooks v. City of Winston–Salem, N.C.,* 85 F.3d 178, 181 (4th Cir.

9

1996); *see also Rice v. PNC Bank, N.A.*, No. PJM 10-07, 2010 WL 1711496, at *3 (D.Md. Apr. 26, 2010) (granting a motion to dismiss claims brought pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, because they were untimely).

## III. Analysis

The complaint, which is in this court on the basis of federal question jurisdiction,[7] attempts to assert both federal and state law claims.  The nature of the claims that Plaintiff intends to allege, however, is somewhat unclear and is complicated by the fact that the complaint appears to be copied from other sources.  Indeed, it contains an allegation referencing an organization with no apparent relationship to this case and frequently uses pronouns inconsistent in gender and in number with the nouns they appear to reference.  Its sparse allegations are also not presented in chronological order and are frequently repeated in various counts of the complaint.

As to Plaintiff's federal claims, the complaint expressly lists counts based on violations of RESPA and RICO.  At various

---

[7] The complaint states that this court "has jurisdiction under 28 U.S.C. § 1331." (ECF No. 1, at 1).  Although the civil cover sheet lists "diversity" as the basis of jurisdiction, Plaintiff indicated on that document that both she and one of the Defendants are citizens of Maryland.  Thus, it does not appear that the court may exercise subject matter jurisdiction over the case on the basis of diversity of citizenship.

places throughout the complaint, Plaintiff also points to sections of the Code of Federal Regulations referencing TILA requirements, and she requests "[a]ll applicable [s]tatutory damages for violations of [TILA]" in the prayer for relief. (ECF No. 1, at 14). Accordingly, the complaint will be construed as attempting to allege violations of RESPA, RICO, and TILA.[8]

Defendants have moved to dismiss these federal claims by contending that they are either (1) not actionable because Congress has not provided a private right of action as to certain violations, (2) untimely, or (3) insufficiently pled to state a claim upon which relief can be granted. Although Plaintiff opposed Defendants' motion to dismiss in part, she did not respond to any of these arguments.

A.    **RESPA Claims**

"RESPA sought to provide consumers with a better understanding of the home purchase and settlement process, and to reduce, when possible, 'unnecessarily high settlement charges caused by certain abusive practices.'" *Proctor v. Metro. Money Store Corp.*, 645 F.Supp.2d 464, 484 (D.Md. 2009) (quoting 12 U.S.C. § 2601). Plaintiff alleges that Defendants violated

---

[8]   This construction is consistent with Defendants' interpretation of the federal claims presented in Plaintiff's complaint, which she does not dispute.

RESPA by failing to provide her with a "Special Information Booklet" and a "Good Faith Estimate as required by [RESPA]," by failing to notify her of "their intention to transfer the servicing of the loan" and "of the actual transfer" of the loan servicing contract, and by failing to disclose hidden fees, such as kickbacks, and "affiliated business arrangements of the Lender, the Settlement Company and the Broker" at settlement. (ECF No. 1 ¶¶ 26, 27, 90-93).

RESPA creates a private right of action for only three types of wrongful acts:  (1) failure of a loan servicer to provide proper notice about a transfer of servicing rights or to respond to a qualified written request for loan information, 12 U.S.C. § 2605; (2) payment of a kickback or unearned fees for real estate settlement services, 12 U.S.C. § 2607;[9] and (3) requiring a buyer to use a title insurer chosen by the seller, 12 U.S.C. § 2608.  *See McKinney v. Fulton Bank*, 776 F.Supp.2d 97, 103 (D.Md. 2010).  Two of the alleged violations asserted by Plaintiff – the failure to provide the "Special Information Booklet" and "Good Faith Estimate" are not covered by these sections.  Therefore, these allegations necessarily fail at the

---

[9] Failure to disclose an affiliated business arrangement may constitute a violation of § 2607 when there are also allegations of kickback and referral fees.  *See Das v. WMC Mortg. Corp.*, --- F.Supp.2d ----, 2011 WL 5914038, at *13 (N.D.Cal. Nov. 28, 2011).

outset because RESPA does not provide Plaintiff with a private right of action to pursue them.  *See Dalton v. Countrywide Home Loans, Inc.*, --- F.Supp.2d ----, 2011 WL 6012508, at *5 (D.Colo. Dec. 1, 2011) (concluding that there is no private right of action for violations of RESPA sections relating to special information booklets); *McKinney*, 776 F.Supp.2d at 103 (dismissing a RESPA claim alleging failure to provide "an accurate good faith estimate" due to lack of a private right of action).

Plaintiff's remaining allegations stem from purported violations of §§ 2605 and 2607.  Claims brought under § 2605 are governed by a three-year statute of limitations, while claims brought under § 2607 are subject to a one-year statute of limitations.  12 U.S.C. § 2614.  The limitations period begins to run "from the date of the occurrence of the violation," which generally refers to the date of closing for loan origination violations.  *See id.; Findlay v. CitiMortgage, Inc.*, 813 F.Supp.2d 108, 117 (D.D.C. 2011); *Brown v. Wilmington Fin.*, No. CCB-11-699, 2012 WL 975541, at *4 (D.Md. Mar. 21, 2012).  Here, both the complaint and the deed of trust indicate that the refinancing closed on September 7, 2007.  Plaintiff, however, did not file her complaint until June 23, 2011, nearly four years later.  Thus, regardless of whether the one-year or three-

year limitations period applies, Plaintiff's allegations relating to nondisclosure at settlement of hidden fees, affiliated business arrangements, and the potential for post-closing transfer of the loan servicing contract are time-barred.[10]

_____

[10] One paragraph of Plaintiff's RESPA claim refers to the doctrine of equitable tolling. (*See* ECF No. 1 § 94) ("Defendants' misconduct was concealed from Plaintiff, which prevented [her] from readily discovering the misconduct, which [s]he was duly diligent in attempting to ascertain."). The doctrine of equitable tolling is applicable to RESPA claims, but "setting aside [the] statute of limitations [as to such claims] is no easy task." *Kerby v. Mortg. Funding Corp.*, 992 F.Supp. 787, 792-98 (D.Md. 1998). Indeed, to succeed in tolling the statute of limitations on equitable grounds, a plaintiff must allege with specificity "fraudulent concealment on the part of the defendants" and the inability of the plaintiff, despite due diligence, to discover the fraud. *Id.* (citing *Davis v. Edgemere Fin. Co.*, 523 F.Supp. 1121, 1125-28 (D.Md. 1981); *Brown*, 2012 WL 975541, at *4-5 (reasoning that a plaintiff "seeking to escape the statute in such a case [must] make distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery [was], so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made").

The complaint's conclusory allegation regarding fraudulent concealment is wholly insufficient to make this showing. *Cf. Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974) ("[M]erely intoning the word 'fraudulently' in a complaint is not sufficient to raise the [doctrine of equitable tolling]."). Additionally, the complaint's few factual allegations regarding Defendants' purported noncompliance with RESPA's requirements do not provide grounds for equitable tolling. *Cf. Davis*, 523 F.Supp. at 1126 (explaining that "[a]pplication of the fraudulent concealment doctrine in the context of the disclosure requirements of . . . TILA requires more than mere nondisclosure" because "[o]therwise, in a context in which nondisclosure is the gravamen of the violation, then

As to Defendants' purported failure to provide Plaintiff with notice about the alleged post-closing transfer of her loan servicing contract, the statute of limitations argument is unpersuasive. The face of the complaint does not indicate when the servicing of Plaintiff's loan was subsequently transferred, instead stating only that "Defendants . . . failed to inform Plaintiff of the actual transfer within fifteen . . . days before the effective date of the transfer." (ECF No. 1 ¶ 91).[11] Because the complaint does not indicate the date on which the loan servicing contract was transferred, it is unclear whether Plaintiff's claim is time-barred, and dismissal on limitations grounds is improper. *See Brooks*, 85 F.3d at 181 (noting that a motion to dismiss based on the expiration of the statute of limitations is appropriate only "when the face of the complaint

---

just about every failure by defendant to disclose as required by . . . TILA would seemingly bring about tolling"). Additionally, because Plaintiff failed to respond to Defendants' argument regarding the statute of limitations in her opposition papers, she is deemed to have abandoned this argument. *Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 250 n.8 (D.Md. 2004).

[11] Defendants apparently overlook the distinction between notice to a borrower regarding a potential transfer of loan servicing (addressed in § 2605(a)) and notice to a borrower upon the actual transfer of the servicing contract (addressed in § 2605(b)(1)). Their motion broadly argues that Plaintiff's claims under § 2605 are barred because the refinancing occurred in 2007. It does not discuss the post-closing transfer of the loan servicing contract.

clearly *reveals* the existence of a meritorious affirmative defense" (emphasis added)); *Myvett v. Litton Loan Servicing, LP*, No. CV-08-5797 MMC, 2010 WL 761317, at *4 (N.D.Cal. Mar. 3, 2010) (explaining that a defendant's "reliance on the statute of limitations [was] unavailing, as plaintiffs [did] not allege the date on which the loan servicing contract was assigned").

Nevertheless, Plaintiff's claim regarding nondisclosure of the transfer of her loan servicing contract must be dismissed as currently pled. To state a claim for such a violation under § 2605(b)(1),[12] a plaintiff must allege *facts* regarding whether a defendant was a loan servicer, when the alleged transfer took place, what entities were involved in the transfer, and what specific damages plaintiff suffered due to the lack of notice. *Teaupa v. U.S. Nat'l Bank, N.A.*, --- F.Supp.2d ----, 2011 WL 6749813, at * 10-11 (D.Haw. Dec. 22, 2011); *Delino v. Platinum Community Bank*, 628 F.Supp.2d 1226, 1232 (S.D.Cal. 2009). Plaintiff provides no such factual allegations to support her claim. Indeed, beyond her "legal conclusion" that "Defendants . . . failed to inform [her] of the actual transfer," she sets forth no information at all about this issue. (ECF No. 1 § 91).

---

[12] This section provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person."

16

Her claim must, therefore, be dismissed. *See, e.g.*, *Delino*, 628 F.Supp.2d at 1232 (dismissing a RESPA claim brought pursuant to § 2605(b)(1) for failure to state a claim); *Gutierrez v. PNC Mortg.*, No. 10cv01770 AJB (RBB), 2012 WL 1033063, at *7 (S.D.Cal. Mar. 26, 2012) (finding that a plaintiff alleging only that "Defendants failed to notify him when his loan was transferred for servicing" had failed to state a claim under § 2605(b)(1)). Plaintiff will be granted leave to amend her complaint as to this claim within fourteen days from the date of the attached Order. *Delino*, 628 F.Supp.2d at 1232 (granting leave to amend under similar circumstances).

**B.   TILA Claims**

TILA "is a federal statute applicable only to creditors and governs the terms and conditions of consumer credit by requiring that lenders disclose certain details about loans, fees, and costs." *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 WL 1375363, at *4 (D.Md. Mar. 26, 2010). Plaintiff's TILA claims are scattered throughout the complaint and generally assert that she did not receive accurate disclosures regarding itemization of finance charges or interest rates related to the refinancing of her home.[13] The statute of limitations for claims

---

[13] Because Plaintiff asserts violations of TILA in numerous counts throughout the complaint, including those discussing the

for monetary damages arising under TILA is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). This limitations period begins to run when the borrower accepts the creditor's extension of credit. *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973); *Davis*, 2010 WL 1375363, at *4; *Woodrow v. Vericrest Fin., Inc.*, No. AW-09-1612, 2009 WL 4348594, at *2-3 (D.Md. Nov. 30, 2009). As previously noted, the refinancing of Plaintiff's home took place on September 7, 2007, and she did not file her complaint until nearly four years later. Accordingly, her TILA claims are time-barred and must be dismissed.[14]

### C.   RICO Claim

Defendants have moved to dismiss Plaintiff's RICO claim as insufficiently pled. Plaintiff appears to bring her RICO claim

---

foreclosure of her home without notice, it is unclear whether she intended to allege a TILA violation based on this lack of notice. To the extent she intended to do so, she has pointed to no legal authority – nor is the court aware of any – that TILA provides a cause of action on that ground. *Cf. Chase Bank USA, N.A. v. McCoy*, 131 S.Ct. 871, 874 (2011) (explaining that Congress passed TILA "to promote consumers' 'informed use of credit' by requiring 'meaningful disclosure of credit terms.'" (quoting 15 U.S.C. § 1601(a))).

[14] For the same reasons set forth in footnote ten, Plaintiff's allegations of fraudulent concealment are insufficient to merit equitable tolling with regard to Plaintiff's TILA claims. *See Kerby*, 992 F.Supp. at 792-98 (concluding that equitable tolling could apply to TILA claims but that it would succeed only in rare cases).

pursuant to 18 U.S.C. § 1962(c).[15]  "In order for a RICO claim to survive a Rule 12(b)(6) motion to dismiss, Plaintiff[] must allege '(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering.'"  *Davis*, 2010 WL 1375363, at *3 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Plaintiff's sparse allegations wholly fail to satisfy these requirements.

First, Plaintiff provides no factual allegations that Defendants were engaged in an enterprise.  "[A]n enterprise [is] defined as an ongoing organization, formal or informal, in which the various associates function as a continuing unit."  *Delk v. ArvinMeritor, Inc.*, 179 F.Supp.2d 615, 626-27 (W.D.N.C. 2002), *aff'd*, 50 F.App'x 775 (4th Cir. 2002).  The complaint states only that "Defendants engaged in a mortgage lending enterprise." (ECF No. 1 ¶ 106).  It contains no factual averments regarding

_____

[15] There are four substantive RICO violations set forth in subsections (a)-(d) of the statute.  The complaint is devoid of allegations that Defendants received any proceeds from a pattern of racketeering activity which any of them used or invested in an enterprise, 18 U.S.C. § 1962(a), that they acquired or maintained any interest in an enterprise through a pattern of racketeering, *id.* § 1962(b), or that they conspired to violate one of the other RICO subsections, *id.* § 1962(d).  Thus, only subsection (c), which makes it unlawful for a "person . . . associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the . . . enterprise's affairs through a pattern of racketeering," could potentially apply.

the relationships between or among Defendants, much less how they "function[ed] as a continuing unit." *Delk*, 179 F.Supp.2d at 626-27.   Such a "'naked assertion[]' devoid of 'further factual enhancement'" need not be credited when evaluating the sufficiency of "enterprise" allegations on a motion to dismiss. *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F.Supp.2d 714, 722-23 (W.D.Va. 2011); *Davis*, 2010 WL 1375363, at *3-4 (dismissing a *pro se* complaint that did not contain any factual averments "that any Defendant was involved in any 'enterprise' as required under [RICO]").

The complaint also fails to allege sufficiently that Defendants engaged in a pattern of racketeering activity.   The RICO statute defines "racketeering activity," in relevant portion, as "any act which is indictable" under a number of enumerated criminal provisions, which include mail and wire fraud.  18 U.S.C. § 1961(1).   The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme.   *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996).   Wire fraud is similar, except that "wire, radio, or television," rather than the mails, provides the means to further the fraud.  18 U.S.C. § 1343.   In the context of a RICO action, the mailings or wirings do not need to contain the misrepresentations that defrauded the

plaintiff, but they must be in furtherance of the fraudulent, material misrepresentation upon which the plaintiff justifiably relied to her detriment. *Chisolm*, 95 F.3d at 337. Additionally, these fraud allegations must state with particularity "the fraudulent acts that form the alleged pattern of racketeering activity" in accordance with Rule 9(b). *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986)).

To allege a "pattern" of racketeering activity, Plaintiff must show that at least two predicate acts of racketeering occurred within ten years of each other, 18 U.S.C. § 1961(5), that the acts were related, and that they "amount to or pose a threat of continued criminal activity, *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240 (quoting *Sedima*, 473 U.S. at 486 n.14). With respect to the continuity element, the United States Court of Appeals for the Fourth Circuit has explained:

> Continuity . . . refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. To

21

> satisfy the continuity element, a plaintiff
> must show that the predicates themselves
> amount to, or otherwise constitute a threat
> of, continuing racketeering activity.

*Menasco, Inc.*, 886 F.2d at 683-84 (internal quotation marks and citations omitted).

The Fourth Circuit has expressed reservations about RICO claims where the predicate acts are mail and wire fraud "because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (internal quotation marks omitted). RICO liability is reserved for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.* (quoting *Menasco, Inc.*, 886 F.2d at 684). The pattern requirement thus serves to "prevent . . . ordinary commercial fraud from being transformed into a federal RICO claim." *Menasco, Inc.*, 886 F.2d at 684-85. Accordingly, "[n]otwithstanding the fact that . . . alleged related acts [may] occur[] over a period of years, an allegation of mail and wire fraud against one victim, without more, does not satisfy the continuity element as interpreted by the Fourth Circuit." *Orteck Int'l, Inc. v. TransPacific Tire & Wheel, Inc.*, No. DKC 05-2882, 2006 WL 2572474, at * 18 (D.Md. Sept. 5, 2006) (citing *Al-Abood* ex rel. *Al-Abood v. El-Shamari*, 217 F.3d 225, 238-39 (4th Cir. 2000)).

22

In light of this backdrop, Plaintiff's allegations fail to allege adequately a pattern of racketeering activity. Incorporating the few factual allegations regarding the refinancing and ultimate foreclosure of her home, Plaintiff asserts that "Defendants engaged in a mortgage lending enterprise to undertake th[is] conduct . . . [and] used the interstate mail and wire systems to communicate and defraud [her] out of her real property." (ECF No. 1 ¶¶ 106, 108). At the outset, the vague reference to Defendants' use of mail or wire systems does not provide any factual description of how they employed mailings or wirings to execute the purportedly fraudulent scheme. Additionally, Plaintiff's allegations fail to set forth sufficiently a "scheme disclosing an intent to defraud." Plaintiff appears to allege fraud based on Defendants' "intentional misrepresentations" regarding her "ability to repay the [refinanced] loan and . . . her qualifications for [that] loan" and the potential forgery of certain signatures on unspecified foreclosure documents. (*Id.* ¶¶ 97-98).[16] These bare, conclusory assertions fail to satisfy

---

[16] It is unclear whether Plaintiff intended to allege fraud based on the alleged refusal of a Shapiro & Burson attorney to provide her with notice about the date of the rescheduled foreclosure sale on her home. Assuming *arguendo* that she intended to allege fraud on this basis and that such an allegation would suffice to allege mail or wire fraud – which is

Rule 9(b)'s particularity requirement.   Indeed, as to the refinancing itself, the allegations fail to reveal "the time, place, and contents of the false representations, [or] the identity of the person making the misrepresentation." *Harrison*, 176 F.3d at 784.   Additionally, "[th]e Rule 9(b) problem is exacerbated in this [instance]" because multiple defendants are involved, but the complaint does not clearly identify "which Defendant played which role." *Davis*, 2010 WL 1375363, at *3 (citing *Wang Labs., Inc. v. Burts*, 612 F.Supp. 441, 445 (D.Md. 1984)).[17]   As to the forged signatures on the foreclosure documents, the complaint does not reveal what foreclosure documents might contain forgeries, the identity of the parties whose signatures were forged, or the identity of the party who forged the signatures (although the complaint could be read to implicate an unidentified employee of Shapiro & Burson).

Finally, the complaint generally references only conduct directed at Plaintiff at the time of her refinancing and again

---

uncertain, at best - her RICO claim would nonetheless fail due to insufficient allegations regarding an "enterprise" and a "pattern" of racketeering activity.

[17] Although the one-year and three-year limitations periods set forth in RESPA and TILA barred consideration of the events that occurred during the refinancing, the statute of limitations for RICO violations is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987).   The refinancing took place on September 7, 2007, and Plaintiff filed her complaint on June 23, 2011.

during foreclosure proceedings against her home.  But "a pattern requires more than just conduct directed at [a single] Plaintiff[]."   *Davis*, 2010 WL 1375363, at *4; *Orteck Int'l, Inc.*, 2006 WL 2572474, at *18.   Indeed, in the absence of allegations of "specific fraudulent conduct perpetuated by any Defendant apart from the alleged conduct directed to Plaintiff[]," a RICO claim cannot survive a motion to dismiss. *Davis*, 2010 WL 1375363.   Plaintiff's claim must, therefore, be dismissed.

### D.   Remaining State Law Claims

As previously noted, subject matter jurisdiction in this matter is based on the federal questions presented in the complaint.[18]  If Plaintiff chooses not to amend her complaint or if the amended complaint fails to state a claim under § 2605(b)(1), no federal question will remain.  At that point, the court would likely decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3) (explaining that district courts have discretion when determining whether to exercise supplemental jurisdiction after "dismiss[ing] all claims over which [they] ha[ve] original jurisdiction"); *see Int'l Ass'n of Machinists & Aerospace*

---

[18] Subject matter jurisdiction over Plaintiff's state law claims exists pursuant to 28 U.S.C. § 1367(a).

*Workers v. Werner-Masuda*, 390 F.Supp.2d 479, 500 (D.Md. 2005) (declining to exercise supplemental jurisdiction because all federal claims had been dismissed early in the case) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Thus, the court will defer consideration of Plaintiff's state law claims at this juncture.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted in part, and Plaintiff will be granted leave to amend her RESPA claim under § 2605(b)(1) within fourteen days of the date of the attached Order.   A separate Order will follow.


                              /s/
                         DEBORAH K. CHASANOW
                         United States District Judge